**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KRIS ESTRADA,<br><br>   *Plaintiff*,<br><br>  v.<br><br>AMERICAN UNIVERSITY &<br>BRAD KNIGHT,<br><br>   *Defendants*. | Civil Action No. 26-cv-00603-ABJ |

**DEFENDANT AMERICAN UNIVERSITY'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF KRIS ESTRADA'S COMPLAINT WITH PREJUDICE**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ..................................................................................................... iii

**INTRODUCTION** ..................................................................................................................... 1

**ALLEGED FACTS AND PROCEDURAL BACKGROUND** ................................................ 2

A.    Plaintiff Enrolls at American University. .................................................................. 2

B.    Defendant Knight's Interactions with Plaintiff. ........................................................ 2

C.    The July 3, 2024 Encounter. ...................................................................................... 3

D.    American University Investigates Plaintiff's Allegations. ........................................ 4

E.    Plaintiff Attempts to Initiate a Second Internal Complaint. ..................................... 5

F.    The University Continues and Completes an Investigation of Potential "Non-Title IX Sexual Misconduct." ................................................................................................ 6

G.    Plaintiff Files this Civil Action. ................................................................................ 7

**LEGAL STANDARD** ............................................................................................................... 7

**ARGUMENT** ............................................................................................................................. 8

I.    THE COURT SHOULD DISMISS PLAINTIFF'S TITLE IX DELIBERATE INDIFFERENCE CLAIM (COUNT I). ...................................................................... 8

A.    Pleading a Prima Facie Case of Deliberate Indifference. .......................................... 8

B.    Plaintiff's Complaint Does Not Plausibly Allege that the Purported Harassment Was Severe or Pervasive. ................................................................................................. 10

C.    Plaintiff Fails to Plausibly Allege that the University's Response Evidenced Deliberate Indifference to His Concerns. .................................................................. 11

D.    Plaintiff Also Does Not Plausibly Allege That the University's Purported Deliberate Indifference Caused Him to Undergo Additional Harassment or Make Him "Liable or Vulnerable To It." ................................................................................................ 13

i.    Plaintiff Does Not Plead that He Endured Any Further Actionable Harassment Following the Initiation of Title IX Proceedings. .................................................. 14

ii.    Plaintiff Does Not Plead Facts Plausibly Indicating that the University's Response Made Him More "Vulnerable" to Harassment. ........................................................ 14

II.    THE COURT SHOULD DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT II). ................................................................................................ 15

A.    Pleading Breach of Contract Pursuant to District of Columbia Law ................ 16

B.    Plaintiff Fails to Identify any Specific Enforceable Contractual Provision That the University Breached During the Investigation. ................................ 16

III.    AT MINIMUM, PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES. ... 18

IV.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS WITH
       PREJUDICE. ................................................................................................. 19

**CONCLUSION** ............................................................................................................. **20**

# TABLE OF AUTHORITIES
## CASES

*Abbas v. Foreign Pol'y Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015).................................................................................................19

*Arana v. Bd. of Regents of Univ. of Wisconsin Sys,*
   142 F.4th 992  (7th Cir. 2025) .................................................................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................7

*Boucher v. Trs. of Canisius Coll.*,
   No. 22-cv-00381, 2025 WL 3558203 (W.D.N.Y. Dec. 11, 2025) .....................................11, 19

*Bryant v. Taylor*,
   244 F. Supp. 3d 209 (D.D.C. 2017).........................................................................................7

*Cavalier v. Cath. Univ. of Am.*,
   306 F. Supp. 3d 9 (D.D.C. 2018).........................................................................................9, 12

*Cavalier v. Cath. Univ. of Am.*,
   513 F. Supp. 3d 30 (D.D.C. 2021)...........................................................................................14

*Choharis v. State Farm Fire & Cas. Co.*,
   961 A.2d 1080 (D.C. 2008) .....................................................................................................18

*Cummings v. Premier Rehab Keller P.L.L.C.,*
   596 U.S. 212 (2022)..................................................................................................................19

*David v. Neumann Univ.*,
   187 F. Supp. 3d 554 (E.D. Pa. 2016) ..................................................................................17, 18

*Davis v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)................................................................................................... passim

*Doe v. Brown Univ.*,
   166, 191 F. Supp. 3d 177 (D.R.I. 2016)....................................................................................9

*Doe v. Columbia*,
   151 F.4th 435 (D.C. Cir. 2025)....................................................................................... passim

*Doe v. Emerson Coll.*,
   271 F. Supp. 3d 337 (D. Mass. 2017) ...................................................................13

*Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*,
   940 A.2d 996 (D.C. 2008) ...................................................................................16

*Farmer v. Kansas State Univ.*,
   918 F.3d 1094 (10th Cir. 2019) ...........................................................................15

*Franklin v. Gwinnett Cnty. Pub. Schs.*,
   503 U.S. 60 (1992)..................................................................................................8

*Hettinga v. United States*,
   677 F.3d 471 (D.C. Cir. 2012) ...............................................................................7

*Jack Baker, Inc. v. Off. Space Dev. Corp.*,
   664 A.2d 1236 (D.C. 1995) .................................................................................16

*Kollaritsch v. Michigan State Univ. Bd. of Trs.*,
   944 F.3d 613 (6th Cir. 2019) ...............................................................................14

*Langeman v. Garland*,
   88 F.4th 289 (D.C. Cir. 2023).................................................................................6

*M.L. By & Through D.L. v. Concord Sch. Dist.*,
   86 F.4th 501 (1st Cir. 2023)..................................................................................13

*McAvoy v. Dickinson Coll.*,
   115 F.4th 220 (3d Cir. 2024) ................................................................................13

*Newman v. Howard Univ. Sch. of L.*,
   715 F. Supp. 3d 86 (D.D.C. 2024)...................................................................17, 18

*Nungesser v. Columbia Univ.*,
   244 F. Supp. 3d 345 (S.D.N.Y. 2017)...................................................................18

*Raihan v. George Washington Univ.*,
   324 F. Supp. 3d 102 (D.D.C. 2018), *app. dismissed*,
   No. 18-7146, 2018 WL 7080496 (D.C. Cir. Nov. 26, 2018).......................10, 11, 19

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
   758 F.3d 296 (D.C. Cir. 2014)................................................................................2

*Rivas v. United American Security, LLC*,
   No. 23-cv-03748, 2026 WL 482531 (D.D.C. Feb. 20, 2026)................................16

iv

*Robinson v. Howard Univ., Inc.*,
    335 F. Supp. 3d 13 (D.D.C. 2018) ......................................................................9, 13

*Rosenthal v. Nat'l Produce Co.*,
    573 A.2d 365 (D.C. 1990) .................................................................................19, 20

*Wells v. Hense*,
    235 F. Supp. 3d 1 (D.D.C. 2017) ..............................................................................8

## FEDERAL STATUTES AND RULES

20 U.S.C.§ 1681(a) ......................................................................................................8

Fed. R. Civ. P. 12(b)(6)................................................................................................7

## **INTRODUCTION**

Plaintiff Kris Estrada's ("Plaintiff") Complaint should be dismissed with prejudice as to Defendant American University ("University" or "Defendant").

Plaintiff alleges that on July 3, 2024, he engaged in a single sexual encounter with the University's then-Assistant Dean of Undergraduate Education, Brad Knight ("Defendant Knight" or "Knight"). Plaintiff initially believed that "a lot of what happened was consensual", and he acknowledges that he never heard from Knight again after that single encounter. Six months later,[1] Plaintiff decided that the July 2024 interaction "felt weird" due to the "power dynamic," and he sought to pursue internal university complaints against Defendant Knight.

Plaintiff's internal complaints against Defendant Knight were investigated under both the University's Title IX and "Non-Title IX" Sexual Misconduct Policies. Ultimately, it was determined that there was no policy violation. While Plaintiff may not be happy with the outcome of the investigation, and is surely not happy that he has been dismissed from the University for unrelated reasons, his unhappiness does not support a cognizable cause of action under any theory.

The University's Motion to Dismiss should be granted and Counts I and II of the Complaint dismissed, with prejudice.

---

[1] Perhaps not coincidentally, Plaintiff was being investigated himself in this time frame for voyeurism, which led to his guilty plea on misdemeanor charges and subsequent dismissal from the University.

### ALLEGED FACTS AND PROCEDURAL BACKGROUND[2]

#### A.    Plaintiff Enrolls at American University.

Plaintiff enrolled at American University for the Fall 2023 semester. Complaint ¶ 7 (hereinafter "Compl."). As a first-year student, Plaintiff was required to complete the "AU Core Curriculum." *Id.* ¶ 41. During the fall of 2023, Defendant Knight served as the Assistant Dean of Undergraduate Education and Senior Director of the AU Core Curriculum. *Id.* ¶ 42. Defendant Knight also led the University College Program and was part of the leadership team for the "AU Cornerstone" program. *Id.* ¶ 44. While enrolled at the University, Plaintiff was a member of both programs. *Id.* ¶ 43.

#### B.    Defendant Knight's Interactions with Plaintiff.

On October 31, 2023, Defendant Knight emailed Plaintiff, introducing himself and welcoming Plaintiff to the University College program. *Id.* ¶ 45. In the email, Knight sought feedback from Plaintiff on potential improvements to the University College experience. *Id.* ¶ 46.

Plaintiff and Defendant Knight did not speak again until the following summer. *Id.* ¶ 48. On June 26, 2024, Defendant Knight initiated a conversation with Plaintiff over Grindr, "a dating and chat platform for gay men." *Id.* Plaintiff alleges that after some pleasantries, Defendant Knight turned the conversation sexual by suggesting that the University's library was a good place to engage in intimate activities. *Id.* ¶¶ 56-60. Plaintiff maintains that he "responded in kind," as he was "unsure how he felt about the situation." *Id.* ¶ 62. After Plaintiff "responded in kind,"

---

[2]    Although the University disagrees with many of the allegations and characterizations offered in Plaintiff's Complaint, it and the Court are required to accept all well-pleaded facts as true for purposes of this Motion only. However, conclusory assertions and declarative statements are entitled to no such deference. *See Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 314-15 (D.C. Cir. 2014) ("We do not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged").

Defendant Knight sent what Plaintiff found to be another sexually suggestive message, writing that "maybe one day we'll find ourselves in the library at the same time." *Id.* ¶ 63.  Plaintiff pleads that he reacted to that comment message with "an emoji," notably failing to indicate what the emoji was.  *Id.* ¶ 64.  The two then discussed a paper Plaintiff was working on, and then the conversation ended.  *Id.* ¶ 65.

Roughly one week later, on July 2, 2024, Defendant Knight reached out to Plaintiff to inquire about the status of Plaintiff's paper.  *Id.* ¶ 66.  Plaintiff states that the conversation that day focused on his summer classes and schoolwork.  *Id.* ¶ 67.  The next day, July 3, 2024, Defendant Knight allegedly messaged Plaintiff again, this time asking if he was "horny."  *Id.* ¶ 70.  Plaintiff indicated that "yes," he was, and he asked Defendant Knight, "what about you?" *Id.* ¶ 71. Defendant Knight purportedly affirmed that he was "a little bit" horny.  *Id.* ¶ 72.  Plaintiff responded with, in his own words, "flirtation," saying, "maybe I could change that."  *Id.* ¶ 73. Defendant Knight subsequently indicated that, if the Plaintiff were to perform oral sex on him, that could help him "focus" at his next meeting.  *Id.* ¶ 74.

### C.    The July 3, 2024 Encounter.

That same day, Knight indicated that he wanted Plaintiff to perform oral sex on him in the first-floor bathroom of the Mary Graydon Student Center (the "Student Center").  Compl. ¶ 76. Plaintiff "initially agreed to go," but subsequently became nervous upon spotting another person using the bathroom.  *Id.* ¶ 77.

Defendant Knight reportedly entered the bathroom and messaged Plaintiff that "the location might not work."  *Id.* ¶ 78-79.  After the other person left the Student Center bathroom, Knight "crawled underneath the divider between the stalls, exposing his erect penis and motioning for [Plaintiff] to come to his stall."  *Id.* ¶ 84.  Plaintiff, apparently having decided to enter the

3

bathroom after all, did so.  Once Plaintiff entered the same stall, Defendant Knight grabbed Plaintiff's genitals, after which Plaintiff performed oral sex on him.  *Id.* ¶¶ 86-88.  Plaintiff maintains that Defendant Knight took out his phone and potentially either recorded Plaintiff or took photographs of him engaged in this sexual act,  and Plaintiff further maintains that he did not consent to being recorded or photographed.  *Id.* ¶¶ 88-89.

Plaintiff confirms that he "never heard from Dean Knight again" after this July 3, 2024 encounter.  *Id.* ¶ 92.

### D.    American University Investigates Plaintiff's Allegations.

On January 7, 2025 -- nearly six months later – Plaintiff claims that his faculty adviser reached out to Lauren Stocks-Smith, an Equity and Title IX (ETIX) investigator, to inform her about the July 2024 interaction between Plaintiff and Defendant Knight.  *Id.* ¶ 94.  Ms. Stocks-Smith conducted an intake interview with Plaintiff just two (2) days later.  *Id.* ¶ 95.  Plaintiff apparently told Ms. Stocks-Smith that while he "initially believed a lot of what happened was consensual", it 'felt weird' due to the 'power dynamic' between the two." *Id.* ¶ 96.  Plaintiff also advised Ms. Stocks-Smith that he did not consent to any recording or photography.  *Id.* ¶ 97.

On January 16, 2025, Selena Benitez-Cuffee, a Title IX Case Manager at the University, emailed Plaintiff to ask how he wanted to proceed "if the University's Title IX Office determined that the conduct as alleged fell within the scope of its policies."  *Id.* ¶ 98.  Plaintiff informed the Title IX office that he wanted to move forward with a formal complaint against Defendant Knight. *Id.* ¶ 99.  Plaintiff intimates that he wanted the University to move forward right away, and was unhappy with what he perceived as a delay, but also acknowledges that the Interim Title IX Coordinator, Laura Buchs, informed him that a Notice of Allegations was being drafted and an investigator would be assigned "when one was available." *Id.* ¶¶ 100-102.

4

On April 7, 2025, Plaintiff received a Notice of Investigation from Ms. Buchs. *Id.* ¶ 103. A few days later, Plaintiff heard from Marissa Abraham, the investigator assigned to his case. *Id.* ¶ 104. Ms. Abraham allegedly indicated that, upon her initial review of Plaintif's complaint, she did not believe that his encounter with Defendant Knight contravened any University policies, but he was free to "present contrary evidence" to her. *Id.* Ms. Abraham requested to interview Plaintiff and asked him to send over pertinent evidence and discuss potential witnesses. *Id.* ¶ 106. On May 12, 2025, Plaintiff submitted a written statement to the investigator. *Id.* ¶ 107. On May 15, the investigator interviewed Plaintiff. *Id.* ¶ 108.

On June 26, 2025, Plaintiff was dismissed from the University after he pled guilty to unrelated misdemeanor voyeurism charges. *Id.* ¶ 7 n.1. The University's investigation into Plaintiff's complaint against Defendant Knight continued, although Plaintiff alleges the investigation was reassigned to Ms. Buchs on or about July 16, 2025. *Id.* ¶ 110.

On July 25, 2025, the University dismissed Plaintiff's formal Title IX complaint. *Id.* ¶ 112. Plaintiff avers that no federal regulations permit the University to dismiss a complaint "prior to investigating" allegations of sexual harassment, *Id.* ¶ 117 -- having pled, of course, that an investigation was conducted. *Id.* ¶¶ 107-08, 110.

On August 1, 2025, Plaintiff appealed the dismissal of his internal Title IX complaint. *Id.* ¶ 125. Roughly one month later, Amy Krumenacker, the Manager of Employee Relations & Compliance for the Office of Human Resources, affirmed the dismissal. *Id.* ¶ 129.

### E.    Plaintiff Attempts to Initiate a Second Internal Complaint.

Plaintiff alleges that, during the Title IX investigatory process, he also initiated a formal complaint pursuant to the University's faculty manual. *Id.* ¶ 133. Ms. Monica Jackson, the Deputy Provost and Dean of Faculty, received the complaint and emailed Plaintiff, informing him that,

among other things, Defendant Knight (an administrator) was not a faculty member, and, therefore, Plaintiff should "continue with the Title IX office." *Id.* ¶¶ 138-39.

     **F.**     **The University Continues and Completes an Investigation of Potential "Non-Title IX Sexual Misconduct."**

Plaintiff's Complaint jumps from the "refusal" to consider a separate faculty complaint against Defendant Knight to an averment that on October 21, 2025, the University found Defendant Knight "not responsible" for any violation of the "**Non-Title IX**" Sexual Misconduct Policy. *Id.* ¶¶ 140-41 (emphasis added). While he does not highlight it, this core fact eviscerates Plaintiff's argument of indifference; namely, that while the University dismissed Plaintiff's formal Title IX complaint under the narrowly prescribed definitions of sexual harassment required by the 2020 Title IX regulations (Complaint, ¶115), it **continued to investigate** Plaintiff's allegations under the University's separate Non-Title IX Sexual Misconduct Policy. See Exhibit A, attached hereto.[3]

---

[3]     Exhibit A consists of the first two pages of the Investigation Report that investigator Marissa Abraham drafted after completing her investigation of Plaintiff's allegations against Knight. The first two pages explain the context of the investigation, a detailed timeline of the investigation work, and a list of Exhibits A-N showing all of the evidence gathered and considered by the Investigator. As Plaintiff's core allegation is that his concerns were not investigated, the University believes these first two pages of the Report are most relevant and sufficient for the Court's consideration of the current Motion. At this time, the University is not attaching the entire report here, which contains salacious details of Plaintiff and Knight's encounter that may be embarrassing to Plaintiff. Should the Court wish to see the entire Report, the University of course will supplement this filing with same and/or provide it for *in camera* review.

     It is appropriate for the Court to consider these materials at the motion to dismiss stage as they are "referred to in the complaint, integral to the claim(s), and if their authenticity is undisputed." *Langeman v. Garland*, 88 F.4th 289, 292 (D.C. Cir. 2023) (internal quotation omitted). The allegation that the University declined to engage in "some form of investigation" is integral to Plaintiff's deliberate indifference and breach of contract claims, and is flatly contradicted by Exhibit A.

One week after the Non-Title IX finding, Plaintiff sent the University a demand letter, already teeing up potential litigation. *Id.* ¶ 152.

Defendant Knight "became disassociated" with the University as of December 4, 2025. *Id.* ¶ 154.

### G.    Plaintiff Files this Civil Action.

On February 25, 2026, Plaintiff filed this action in the United States District Court for the District of Columbia. (ECF No. 1.)  In this suit, he asserts three claims: (1) Deliberate Indifference under Title IX against the University; (2) Breach of Contract against the University; and (3) Intrusion Upon Seclusion against Defendant Knight.  The University takes no position at this time on the direct claims against Defendant Knight.

### <u>LEGAL STANDARD</u>

To avoid dismissal under Fed. R. Civ. P. 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face," and must provide "more than labels and conclusions [or] a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted and citation modified).  Rather, "the complaint must allege facts that 'plausibly suggest' – and are 'not merely consistent with' – the defendant's liability." *Bryant v. Taylor*, 244 F. Supp. 3d 209, 212 (D.D.C. 2017) (citing *Twombly*, 550 U.S. at 557, 567).  "[T]he Court need not accept inferences drawn by [a] plaintiff if those inferences are not supported by the facts set out in the complaint, nor must the court accept legal conclusions cast as factual allegations." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012).

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS PLAINTIFF'S TITLE IX DELIBERATE INDIFFERENCE CLAIM (COUNT I).**

In Count I of his Complaint, Plaintiff alleges that the University violated Title IX by exhibiting deliberate indifference to his allegations of sexual harassment. Plaintiff maintains that, through the filing of a disciplinary report and Title IX complaint, he put the University on notice as to Defendant's Knight's conduct. Compl. ¶¶ 94, 133. Plaintiff asserts that the University inadequately responded to his concerns, and that this inadequacy rose to the level of deliberate indifference. *Id.* ¶¶ 172-75.

**A.    Pleading a Prima Facie Case of Deliberate Indifference.**

"Title IX seeks to eliminate sex-based discrimination in education programs that receive federal funds." *Doe v. Columbia*, 151 F.4th 435, 445 (D.C. Cir. 2025). The statute provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C.§ 1681(a). "Title IX implies a private right of action to enforce its prohibition on sex discrimination." *Wells v. Hense*, 235 F. Supp. 3d 1, 7 (D.D.C. 2017). Therefore, private parties may seek monetary damages for intentional violations of the statute. *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 76 (1992). This private right of action "encompasses claims" for deliberate indifference to allegations of sexual harassment. *See Wells*, 235 F. Supp. 3d at 7. However, as the Supreme Court explained in the seminal deliberate indifference case, *Davis v. Monroe County Board of Education*, private damages actions require intentional discrimination, and are limited "to cases having a systemic effect on educational programs or activities." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 653 (1999) ("*Davis*").

8

"To prevail on a claim of deliberate indifference to sexual harassment, a plaintiff must satisfy five elements." *Doe*, 151 F.4th at 446; Compl., ¶ 166.

> First, the sexual harassment complained of must be so severe, pervasive, and objectively offensive . . . that the victim-students are effectively denied equal access to an institution's resources and opportunities. Second, an official with authority to address the harassment must have actual knowledge of that harassment. Third, the recipient must have substantial control over both the harasser and the context in which the known harassment occurs. Fourth, the recipient's response or failure to respond must amount to deliberate indifference to known acts of harassment. Fifth, that deliberate indifference must subject its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it.

*Id.* (citation modified). "Deliberate indifference claims 'are typically brought in cases where a school has ignored a victim's complaint of sexual harassment or assault.'" *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 28 (D.D.C. 2018) (citing *Doe v. Brown Univ.*, 166, 191 F. Supp. 3d 177 (D.R.I. 2016)). "A court, accordingly, may find 'deliberate indifference' only if the university's response, or failure to respond, 'to the harassment . . . is ***clearly unreasonable*** in light of the known circumstances." *Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9, 26 (D.D.C. 2018) (emphasis added) (citing *Davis*, 526 U.S. at 648). "In an appropriate case, there is no reason why courts, on a motion to dismiss. . . could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649. "In resolving the University's motion to dismiss, the Court must refrain from second-guessing the disciplinary decisions made by school administrators, and must distinguish between allegations of insensitivity, negligence, or lack of zeal—which are not actionable—and allegations of deliberate indifference to known acts of harassment in [the University's] programs or activities." *Cavalier*, 306 F. Supp. 3d at 27 (internal quotations omitted).

For the reasons outlined herein, Plaintiff's Complaint insufficiently alleges the first, fourth, and fifth elements of a prima facie deliberate indifference case. Each is discussed in turn.

**B.      Plaintiff's Complaint Does Not Plausibly Allege that the Purported Harassment Was Severe or Pervasive.**

To adequately aver the first element of a prima facie deliberate indifference case, a plaintiff must plead plausible facts evincing that he or she faced "harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis*, 526 U.S. at 633.  Generally, "isolated incidents are unlikely to create the 'systemic effect' necessary to trigger liability." *Raihan v. George Washington Univ.*, 324 F. Supp. 3d 102, 112 (D.D.C. 2018), *app. dismissed*, No. 18-7146, 2018 WL 7080496 (D.C. Cir. Nov. 26, 2018) (citation omitted).

The isolated incident between Defendant Knight and Plaintiff—which is the only event preceding Plaintiff's initiation of an internal complaint—is insufficient to establish a severe and pervasive environment.  The single alleged bathroom encounter between Plaintiff and Defendant Knight occurred in July of 2024.  Compl.  ¶¶ 69-93. In his Complaint, Plaintiff concedes that, after the encounter, "Mr. Estrada **never heard from Dean Knight again**." *Id.* ¶ 92 (emphasis added). This allegation alone is fatal to Plaintiff's Title IX claim.

This Court's opinion in *Raihan v. George Washington University*, while perhaps not identical, is instructive.  In *Raihan*, the plaintiff alleged that George Washington University ("GW") was deliberately indifferent to her allegation of sexual assault.  *Raihan*, 324 F. Supp. 3d at 111-12.  Specifically, the plaintiff claimed that GW's failure to provide a prompt and equitable remedy "exposed her to the risk of continued sexual harassment . . . so severe, pervasive, and objectively offensive that it effectively barred her access to educational opportunities and benefits including academics, and on campus events and activities." *Id.* at 111.  Plaintiff focused on the fact that she sought (and obtained) a no-contact order against her alleged assaulter, but she still ran

10

into her assaulter once after the order was entered, at the GW gym.  *Id.* Plaintiff asserted that this interaction functionally denied her access to the gym facilities on campus.

The *Raihan* Court rejected this argument, and found that Raihan inadequately pled deliberate indifference. Emphasizing that Title IX protects against "severe, pervasive, and objectively offensive harassment," *id.* at 113 (citation omitted), the Court held that "[s]eeing one's abuser" one time "in a campus gym is not 'pervasive' harassment or a 'systemic' denial of educational benefits." *Id.* at 114; *see also Boucher v. Trs. of Canisius Coll.*, No. 22-cv-00381, 2025 WL 3558203 at *22 (W.D.N.Y. Dec. 11, 2025) (applying *Davis* and granting summary judgment to Canisius College on post-assault Title IX claim when "Plaintiffs did not see, speak to, or have any contact with" the alleged assaulter again).  Here, Plaintiff alleges **no** facts evincing "severe and pervasive harassment." To the contrary, and in his own words, Plaintiff "never heard from Dean Knight again" after their one bathroom encounter.  Compl. ¶ 92.  As the court confirmed in *Raihan*,  a single incident does not constitute severe or pervasive harassment.

Plaintiff also has not plausibly pled that he was denied any educational opportunities or benefits as a result of this single encounter.  Plaintiff was dismissed from the University, but as he acknowledges, that was for completely unrelated reasons. *Id.* ¶ 7, n. 1.  While Plaintiff opaquely references losing access to unnamed "student organization memberships" and "struggling" with schoolwork and classes because of his incident with Defendant Knight, *id.* ¶ 168, these conclusory assertions are insufficient to plead a **denial** of opportunities or benefits by the University.

For these reasons, alone, Plaintiff's Title IX claim should be dismissed.

**C.    Plaintiff Fails to Plausibly Allege that the University's Response Evidenced Deliberate Indifference to His Concerns.**

"Deliberate indifference is a 'high standard' that requires more than a showing of mere negligence." *Doe*, 151 F.4th at 446 (citation omitted).  Rather, "to avoid liability," the University

"must merely respond to known . . . harassment in a manner that is not clearly unreasonable." *Id.* at 447. Here, Plaintiff's Complaint falls well short of alleging that the University acted in a "clearly unreasonable" manner. *Id.*

Plaintiff challenges the University's response to his allegations on the basis that the University "[a]t the very least, [ ] could have engaged in *some* form of investigation" (emphasis in Complaint), but "[i]nstead, took no action to protect Mr. Estrada and other University students." Compl. ¶¶ 173-74. The timeline of events, however, flatly contradicts this.

Plaintiff reported the bathroom encounter to his faculty advisor (and through her, to the Title IX office), on January 7, 2025. Compl. ¶ 94. A determination was reached on October 21, 2025. *Id.* at ¶ 141. Plaintiff should not be permitted to sneak past a motion to dismiss by failing to plead material facts about what took place in the intervening months. And here, in those intervening months, Plaintiff's concerns **were** processed and investigated, resulting in a final report on October 21, 2025. Exhibit A.

While Plaintiff asserts that a portion of the investigation  -- one that he concurrently says was not conducted at all -- was "perfunctory" and improperly "assessed the sufficiency of the evidence,"  Compl. ¶¶ 121 123, that is of no moment. As this Court held in the *Cavalier* case, "allegations of insensitivity, negligence, or lack of zeal" during an internal investigation or process are not actionable. *Cavalier*, 306 F. Supp. 3d at 27. The same is true for Plaintiff's contentions that the University, during the investigatory and appeals process, made erroneous determinations as to his (and Defendant Knight's) credibility. *Id.* ¶¶ 145-51. As the Supreme Court explained in *Davis*, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648. It is only when an institution's response is "clearly unreasonable in light of the known circumstances" that Title IX liability may be imposed. *See id.*

12

Plaintiff's Complaint does not meet this pleading standard. Plaintiff cites no actual deviation from any University policy or procedure during the investigation and appeal process. He similarly does not allege that he was denied the chance to provide evidence or submit written or oral statements.  Simply put, Plaintiff's disagreement with the handling or outcome of the investigation is not tantamount to a response that is deliberately indifferent, and he has failed to plead the fourth element of a prima facie case of Title IX deliberate indifference.  *See generally Robinson, Inc.*, 335 F. Supp. 3d at 28  (dismissing Title IX deliberate indifference claim when the plaintiff fails to plead unreasonable acts by any Howard University administrators and merely takes issue with the refusal to rule in his favor on appeal); *see also McAvoy v. Dickinson Coll.*, 115 F.4th 220, 233–34 (3d Cir. 2024) (affirming grant of summary judgment for Dickson College on a deliberate indifference claim and explaining that "even if Dickinson could have done more, communicated more frequently, and acted more quickly, the evidence shows that its response was not clearly unreasonable under the known circumstances");  *M.L. By & Through D.L. v. Concord Sch. Dist.*, 86 F.4th 501, 511 (1st Cir. 2023) ("Title IX does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by parents") (internal quotations omitted); *Doe v. Emerson Coll.*, 271 F. Supp. 3d 337, 355–56 (D. Mass. 2017) ("Title IX does not guarantee that an investigation will yield the outcome that a complainant desires. Nor does it require that all complainants be deemed credible, simply because they are complainants").

### D. Plaintiff Also Does Not Plausibly Allege That the University's Purported Deliberate Indifference Caused Him to Undergo Additional Harassment or Make Him "Liable or Vulnerable To It."

The fifth and final element of a prima facie case requires Plaintiff to plausibly allege that the University's purported deliberate indifference either caused him to undergo additional

13

harassment or made him "liable or vulnerable to it." *Doe*, 151 F.4th at 446. There is currently a circuit split on the pleading requirement for this element. "Under one line of authority, a plaintiff must establish that [he] suffered additional harassment as a result of the defendant's deliberate indifference." *Cavalier v. Cath. Univ. of Am.*, 513 F. Supp. 3d 30, 59 (D.D.C. 2021). "Under the competing line of authority, a plaintiff need establish only that the university's deliberate indifference left the plaintiff 'vulnerable' to future harassment." *Id.* at 60. The District of Columbia Circuit has not yet adopted either approach, and the Court need not decide today. Under either approach, Plaintiff's claim fails.[4]

### i. Plaintiff Does Not Plead that He Endured Any Further Actionable Harassment Following the Initiation of Title IX Proceedings.

Plaintiff does not plead that the University's response to his allegations caused him to undergo "further actionable harassment." *Kollaritsch v. Michigan State Univ. Bd. of Trs.*, 944 F.3d 613, 620 (6th Cir. 2019). Plaintiff in fact makes a point of pleading that he "never heard from Defendant Knight again" after July 3, 2024, and he alleges no additional harassment thereafter up until his ultimate dismissal from the University in June 2025. Compl. ¶ 92.

### ii. Plaintiff Does Not Plead Facts Plausibly Indicating that the University's Response Made Him More "Vulnerable" to Harassment.

Plaintiff's allegations are deficient even under the lower "vulnerability" pleading standard. That standard, as articulated by the United States Court of Appeals for the Tenth Circuit, permits a plaintiff to allege that "the funding recipient's deliberate indifference caused them to be vulnerable to further harassment without requiring an allegation of subsequent actual sexual

---

[4]    The United States Court of Appeals for the Seventh Circuit described the circuit split, in some detail, in its vacated opinion in *Arana v. Bd. of Regents of Univ. of Wisconsin Sys. See* 142 F.4th 992 n.7 (7th Cir. 2025) (discussing the 4-3 circuit split on the pleading requirements for deliberate indifference claims).

harassment," to establish a prima facie case. *Farmer v. Kansas State Univ.*, 918 F.3d 1094, 1104 (10th Cir. 2019) (citation modified). Plaintiff asserts in conclusory fashion that the University's deliberate indifference left him "vulnerable to further harassment because Dean Knight, absent even the slightest penalty, was free to circulate the video recording or photographs, or otherwise contact Mr. Estrada for additional sexual activity." Compl. ¶ 175. This summary allegation misses the mark.

To sufficiently plead deliberate indifference, Plaintiff must plausibly assert that the vulnerability "reasonably deprived [him] of educational opportunities available to other students." *Farmer*, 918 F.3d at 1105; *see also Davis*, 526 U.S. at 650 (explaining that Title IX imposes liability for institutions whose indifference "can be said to deprive the victims of access to the educational opportunities or benefits provided by the school"). Plaintiff identifies no educational opportunities or benefits of which he was deprived. And if something as vague as "I was harassed once, so that means I might have been harassed again -- *even though I was not*" is enough to meet the vulnerability pleading standard, the "severe or pervasive" element of a Title IX claim collapses onto itself.

Plaintiff has not plausibly pled the fifth element of his prima facie Title IX case. For all of the reasons detailed *supra*, that claim, Count I of the Complaint, should be dismissed.

## II.  THE COURT SHOULD DISMISS PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT II).

In Count II of his Complaint, Plaintiff asserts a breach of contract claim against the University. Specifically, Plaintiff maintains that the University violated its Title IX Sexual Harassment Policy, which purportedly provides that the University will "prohibit sexual harassment, sexual misconduct, and retaliation." Compl. ¶ 179. This assertion is without merit.

15

A.        **Pleading Breach of Contract Pursuant to District of Columbia Law.[5]**

A plausibly-pled breach of contract claim under District of Columbia law requires a party to plead: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." *Rivas v. United American Security, LLC*, No. 23-cv-03748, 2026 WL 482531, at \*12 (D.D.C. Feb. 20, 2026). "Under D.C. law, as is generally true, '[f]or an enforceable contract to exist, there must be both (1) agreement as to all material terms; and (2) intention of the parties to be bound.'" *Jack Baker, Inc. v. Off. Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995) (citation omitted). "In addition, mutuality of obligation must exist." *Eastbanc, Inc. v. Georgetown Park Assocs. II, L.P.*, 940 A.2d 996, 1002 (D.C. 2008). "For a contract to be enforceable, each party must undertake to do something [the] party otherwise is under no legal obligation to do, or to refrain from doing something [the] party has a legal right to do." *Id.* at 1003 (citation modified).

B.        **Plaintiff Fails to Identify any Specific Enforceable Contractual Provision That the University Breached During the Investigation.**

In support of his breach of contract claim, Plaintiff relies solely on the University's putative "promise" to "prohibit sexual harassment, sexual misconduct, and retaliation." Plaintiff cites to the University's "Title IX Sexual Harassment Policy" (Compl. ¶179), but as noted above, both the Title IX Policy and the Non-Title IX Sexual Harassment Policy were implicated here, and these policies have been revised over time. Plaintiff could have simply quoted the exact language and provided a specific citation if a particular policy is drafted as he represents, but by failing to do so, he has made an analysis of this claim more difficult.

---

[5]        As the University is based in the District of Columbia, Plaintiff and Defendant Knight had their alleged interaction on the campus of the University, and Plaintiff was a student at the University and Defendant Knight an employee of the University, there can be no question that D.C. substantive law applies.

Importantly, though, this inefficiency does not preclude the Court from granting the University's motion to dismiss. Regardless of the source or exact phrasing, any putative "promise" to "prohibit" sexual harassment, sexual misconduct, or retaliation is a non-enforceable aspirational statement, not language that establishes an enforceable contractual obligation. No entity – whether a university, private business, governmental agency, or any other organization – can "promise" to prohibit bad human behaviors. It can state that such behaviors are not tolerated, which the University does. But it is fantastical to assert that the University is contractually bound to pre-emptively prohibit such behavior among thousands of students, faculty, employees, visitors, and the like.

More critically, though, this assertion is not consistent with the law. *Newman v. Howard University School of Law* is a helpful starting point. In *Newman*, the plaintiff cited Howard University's non-discrimination policy, which reads, in relevant part, that the University "will 'strive to eliminate discrimination and that it will not tolerate discrimination or harassment against any person." *Newman v. Howard Univ. Sch. of L.*, 715 F. Supp. 3d 86, 103 (D.D.C. 2024) (citation altered). The Court found that this language did not create an enforceable contract under D.C. law, because "the use of 'strive' is precatory, not promissory. It describes Howard's goals for campus culture but does not create an enforceable obligation *vis-à-vis* Newman." *Id.* In other words, Howard's non-discrimination policy was a statement of aspiration, which imposed no reciprocal obligation on the plaintiff. *Id.* The Court properly concluded that this aspirational statement could not give rise to an enforceable contractual duty on the University's part. *See id.*

Other courts are in accord. In *David v. Neumann University*, for example, the Court dismissed a breach of contract claim based on Neumann's stated policy of "zero tolerance" for

17

race discrimination, hostile environment, and retaliatory actions. *See David v. Neumann Univ.*, 187 F. Supp. 3d 554, 559 (E.D. Pa. 2016). In so holding, the Court explained that the plaintiff "has not shown how the University's general, aspirational policy statement created any sort of affirmative, enforceable duty on the part of the University." *Id.* at 560. The Court in *Nungesser v. Columbia University* reached a similar conclusion. In *Nungesser*, the plaintiff asserted breach of contract based on Columbia's gender-based misconduct policies. *Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 373 (S.D.N.Y. 2017). Those policies stated, in relevant part, that the University was "committed to providing an environment free from gender-based discrimination and harassment." *Id.* The Court determined that this aspirational commitment was "precisely the type of general policy statement that cannot form the basis for a breach of contract action." *Id.* The Court explained that to sufficiently allege breach of contract, the plaintiff needed to identify "concrete" and "specific" promises which Columbia breached. *See id.*

This case is on all fours with *Newman*, *Neumann*, and *Nungesser*. The purported policy language, at most, confirms the University's goal of protecting students, faculty, and staff from discrimination, harassment, retaliation and sexual misconduct. That same language, which imposes no reciprocal obligations on Plaintiff, cannot form the basis for his breach of contract claim.

The University did not breach any enforceable contractual provision. Dismissal of Count II, with prejudice, is proper.

## III.    AT MINIMUM, PLAINTIFF CANNOT RECOVER PUNITIVE DAMAGES.

In his prayer for relief, Plaintiff seeks punitive damages. Even if the Court for some reason does not dismiss Plaintiff's claims outright, he cannot obtain punitive damages for either his Title IX nor his breach of contract claims against the University. *Choharis v. State Farm Fire & Cas.*

18

*Co.*, 961 A.2d 1080, 1090 (D.C. 2008) ("Where the basis of a complaint is, as here, a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious") (citation omitted); *Cummings v. Premier Rehab Keller P.L.L.C.,* 596 U.S. 212, 221 (2022) (punitive damages unavailable for private cause of action brought under Title IX).

**IV.    THE COURT SHOULD DISMISS PLAINTIFF'S CLAIMS WITH PREJUDICE.**

"Dismissal with prejudice is warranted when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1340 (D.C. Cir. 2015). The University respectfully submits that no additional factual allegations could cure the defects in Plaintiff's Complaint, and, as such, this Court should dismiss Counts I and II with prejudice.

In Count I, Plaintiff explicitly states that, after the bathroom encounter, he "never heard from Dean Knight again." Compl. ¶ 92. It follows that even if afforded the opportunity to amend his pleadings, Plaintiff will never be able to plead the first or fifth elements of a deliberate indifference claim. One isolated incident, with no additional harassment, does not constitute "severe" or "pervasive" harassment such that Plaintiff was denied access to educational benefits. *See Raihan*, 324 F. Supp. 3d at 114; *Boucher*, 2025 WL 3558203 at *22. And, for the reasons outlined herein, Plaintiff has effectively admitted that the University's response did not cause him "undergo harassment" nor did it make him "liable or vulnerable to it." *Davis*, 526 U.S. at 645. Count I is fatally defective, and Plaintiff should not be afforded leave to amend.

Count II is similarly deficient. Plaintiff's breach of contract claim does not identify with specificity an enforceable contractual provision which the University declined to follow. It is well-established that, "[a] contract must be sufficiently definite as to its material terms . . . that the promises and performance to be rendered by each party are reasonably certain." *Rosenthal v. Nat'l*

*Produce Co.*, 573 A.2d 365, 370 (D.C. 1990).  Even if Plaintiff could specify the source of the alleged "promise" of non-harassment he references, such a promise is purely aspirational and not a binding contractual term, as a matter of law.

These pleading defects cannot be cured.  The Court should dismiss Counts I and II with prejudice.

## CONCLUSION

In considering the foregoing, American University respectfully requests that the Court dismiss Plaintiff Kris Estrada's Complaint, with prejudice, for failure to state a claim upon which relief can be granted.

Respectfully submitted,

**SAUL EWING LLP**

March 19, 2025

*/s/Timothy D. Intelisano*
Timothy D. Intelisano (D.C. Bar. No. 90033254)
1919 Pennsylvania Avenue NW, Suite 550
Washington, D.C. 20006
Tel:     (202) 333-8800
Fax:     (202) 337-6065
timothy.intelisano@saul.com

James A. Keller (*Pro Hac Vice* forthcoming)
1735 Market Street, Suite 3400
Philadelphia, PA 19103-7504
Tel: (215) 972-7777
james.keller@saul.com

20