## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| KRIS ESTRADA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 1:26-cv-00603-ABJ |
| | ) | |
| AMERICAN UNIVERSITY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BRAD KNIGHT'S MOTION TO DISMISS

Parker Bowman, VA227
Lindsay R. McKasson
D.C. Bar No. 1618740
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Phone: (703) 888-1943
Fax: (703) 888-1930
parker@binnall.com
lindsay@binnall.com

*Counsel for Plaintiff Kris Estrada*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................ ii

BACKGROUND ............................................................................................................1

    A.    Mr. Estrada's Time at American University. ................................................1
    B.    Mr. Estrada Meets Dean Knight. ...................................................................1
    C.    Dean Knight Messages Mr. Estrada on Grindr. ..........................................2
    D.    Mr. Estrada's Encounter with Dean Knight. ...............................................2
    E.    The University's Failure to Investigate. .......................................................3
    F.    The University's Dismissal of Mr. Estrada's Complaint and Appeal. .........4
    G.    The University Finds Dean Knight Not Responsible. ..................................5

ARGUMENT ................................................................................................................6

    I.    Legal Standard. ..............................................................................................6

    II.    The Statute of Limitations Should be Tolled. ..............................................7

        A.  Equitable Tolling Should Apply. ...................................................................7
        B.  Equitable Estoppel Precludes Defendant from asserting Untimeliness. ..11

    III.    In the Alternative, the Court Should Permit Limited Discovery. ..............12

    IV.    Plaintiff Plausibly States a Claim. ............................................................14

CONCLUSION ..........................................................................................................17

CERTIFICATE OF SERVICE ..................................................................................18

TABLE OF AUTHORITIES

### Cases

*Air Excursions LLC v. Yellen,*
66 F.4th 272, 277 (D.C. Cir. 2023) ................................................................6

*Ashcroft v. Iqbal,*
556 U.S. 662, 678 (2008) ................................................................6

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544, 570 (2007) ................................................................6

*Cada v. Baxter Healthcare Corp.,*
920 F.2d 446, 450-51 (7th Cir. 1990) ................................................................11

*Doe v. Exxon Mobil Corp.,*
573 F. Supp. 2d 16, 34 (D.D.C. 2008) ................................................................9

*Greenpeace, Inc. v. Dow. Chem. Co.,*
97 A.3d 1053, 1062 (D. C. Cir. 2014) ................................................................7

*Int'l Ass'n of Machinists & Aero. Workers, Dist. Lodge 64 v. NLRB,*
130 F.3d 1083, 1087 (D.C. Cir. 1997) ................................................................10

*Irwin v. Dep't of Veterans Affairs,*
498 U.S. 89, 96 (1990) ................................................................7

*Malibu Media, LLC v. Doe,*
64 F. Supp. 3d 51, 52 (D.D.C. 2014) ................................................................12

*Mondy v. Secretary of Army,*
845 F.2d 1051, 1057 (D.C. Cir. 1988) ................................................................11

*Schuchart v. La Taberna del Alabardero, Inc.,*
365 F.3d 33, 35-36 (D.C. Cir. 2004) ................................................................15

*Smith-Haynie v. District of Columbia,*
155 F.3d 575, 580 (D.C. Cir. 1998) ................................................................7, 11

*Warner Bros. Records Inc. v. Does 1-6,*
527 F. Supp. 2d 1, 2 (D.D.C. 2007) ................................................................12

*Watts v. SEC,*
    482 F.3d 501, 507 (D.C. Cir. 2007) ..........................................................................12

### Other Authorities

*University Policy: Title IX Sexual Harassment Policy*, AMERICAN UNIVERSITY, at 11,
    https://www.american.edu/policies/au-community/upload/title-ix-sexual-
    harassment-policy.pdf (last visited April 23, 2026)...................................................8

### Rules

Fed. R. Civ. P. 26(d)(1) ...............................................................................................12

Defendant Brad Knight's Motion to Dismiss and accompanying Memorandum in Support rest on a misunderstanding of the law regarding statutes of limitations and cheap shots regarding Mr. Estrada's past. At its core, the case against Dean Knight is about the non-consensual recording and possible continued retention of sexually explicit images of a student by Dean Knight. Dean Knight did not face any consequences from his employer, Defendant American University, but this Court should not allow that to continue. The continued existence and potential dissemination of those images constitute an ongoing harm, rendering Mr. Estrada vulnerable to further harassment from Dean Knight.

## BACKGROUND

### A. Mr. Estrada's Time at American University.

Plaintiff Kris Estrada enrolled and matriculated as an undergraduate student at American University (hereinafter "Defendant" or "University") in the fall semester of 2023. Compl. ¶ 7. Mr. Estrada left the University on June 26, 2025, when he was expelled for an unrelated disciplinary violation. *Id.*

### B. Mr. Estrada Meets Dean Knight.

When Mr. Estrada arrived at the University, like all first years, he was required to complete the AU Core Curriculum. Compl. ¶ 41. Defendant Brad Knight (hereinafter "Dean Knight") had supervisory authority over the AU Core Curriculum. *Id.* ¶ 42. Dean Knight also had supervisory authority over Mr. Estrada through the AU Cornerstone program. *Id.* ¶ 43.

1

Dean Knight's first contact with Mr. Estrada was a personalized email with the subject "Just checking in," with which he formally introduced himself and represented to Mr. Estrada that he led the University programs. Compl. ¶ 45.

### C.  Dean Knight Messages Mr. Estrada on Grindr.

On June 26, 2024, Dean Knight messaged Mr. Estrada on Grindr, a dating and chat platform for gay men. Compl. ¶ 48. When Mr. Estrada received the message, he viewed Dean Knight's profile, which indicated that he was married and was on the platform to just meet friends. *Id.* ¶ 51. Thus, when Mr. Estrada chose to respond to Dean Knight, he truly believed that Dean Knight was reaching out just for that purpose, considering Dean Knight was married. *Id.* ¶ 52. Dean Knight's messages with Mr. Estrada quickly turned sexual after exchanging pleasantries. *Id.* ¶¶ 56-64.

On July 2, 2024, Dean Knight reached out to Mr. Estrada again, asking how his assignments from June 26 had progressed. Compl. ¶ 67. On July 3, Dean Knight and Mr. Estrada continued conversing. *Id.* ¶ 69. Again, Dean Knight quickly turned the conversation sexual, asking Mr. Estrada: "Little horny today eh?" *Id.* ¶ 70. Despite Mr. Estrada feeling uncomfortable with the messages, he responded in kind, and the messages continued to escalate. *Id.* ¶¶ 71-75.

### D.  Mr. Estrada's Encounter with Dean Knight.

Eventually, Dean Knight sent Mr. Estrada a location, the first-floor bathrooms of the Mary Graydon Center on campus. Compl. ¶ 76. Mr. Estrada agreed to go but indicated to Dean Knight that someone else was in the bathroom. *Id.* ¶ 77. Both waited in separate stalls, and eventually Dean Knight asked if the other person left.

Compl. ¶¶ 78-80. The waiting allowed Mr. Estrada to realize how uncomfortable he was with the situation, but he began to fear the consequences for backing out. *Id.* ¶¶ 81-82. Mr. Estrada attempted to exit the situation by messaging Dean Knight, "I think it must be the door next to us," "but its [sic] just so scary ahah." *Id.* ¶ 83.

Seconds later, undeterred by Mr. Estrada's last message, Dean Knight climbed under the divider, exposed his erect penis, and motioned for Mr. Estrada to join him. Compl. ¶ 84. As soon as Mr. Estrada entered Dean Knight's stall, Dean Knight grabbed his genital area. *Id.* ¶ 86. After a while, Dean Knight motioned for Mr. Estrada to perform oral sex. *Id.* ¶ 87. While Mr. Estrada was doing so, he saw Dean Knight take out his phone and either record or take pictures of him. *Id.* ¶ 88. Mr. Estrada never consented to being recorded or photographed. *Id.* ¶ 89. Mr. Estrada never heard from Dean Knight again. *Id.* ¶ 92.

### E.  The University's Failure to Investigate.

In January of 2025, Mr. Estrada's faculty-advisor reached out to Lauren Stocks-Smith to inform her of the incident with Dean Knight. Compl. ¶ 94. Two days later, Stocks-Smith conducted an intake interview. *Id.* ¶¶ 95-97. Mr. Estrada indicated that he initially believed what happened was consensual but weird due to a power dynamic. *Id.* Essentially, Mr. Estrada was telling Ms. Stocks-Smith that he felt coerced into sexual activity. *Id.* He also made it exceedingly clear that he never consented to any recording or photography. *Id.*

Mr. Estrada's next contact with the Title IX office came a week later, when Selena Benitez-Cuffee emailed Mr. Estrada to ask how he would like to proceed if the

3

office determined that the conduct as alleged fell within the scope of the office's policies. Compl. ¶ 98. Unbeknownst to Mr. Estrada, this would be his last contact with the Title IX office for two months. *Id.* ¶ 100. On March 19, Mr. Estrada conveyed his displeasure with the failure to respond to a formal complaint. *Id.* ¶ 101. Laura Buchs, the Interim Title IX Coordinator, responded, stating that the office was drafting a Notice of Allegations and assigning an investigator when possible. *Id.* ¶ 102.

Mr. Estrada received the Notice of Investigation from Ms. Buchs on April 7. Compl. ¶ 103.  Merely four days later, the investigator, illustrating her preconceived bias, told Mr. Estrada that he could present evidence in an interview but that she already did not believe the relationship was against University policy. *Id.* ¶ 104. This quick initial determination, after months of inactivity, indicated from the outset that the University was ready to believe Dean Knight. *Id.* ¶ 105.

Mr. Estrada was interviewed on May 15. Compl. ¶ 108. After this interview, Mr. Estrada received two more months of silence. *Id.* ¶ 109. Then, on July 16, Mr. Estrada was informed that Ms. Buchs, who was the Title IX Coordinator and not an investigator, was now investigating his complaint. *Id.* ¶¶ 110-111. This caused much confusion regarding why the investigation would be handed off to someone else. *Id.*

### F.  The University's Dismissal of Mr. Estrada's Complaint and Appeal.

Nine days later, Ms. Buchs issued a one-page written "Notice and Dismissal." Compl. ¶ 112. The Title IX regulations do not permit a university to assess the sufficiency of the evidence in deciding whether to dismiss a complaint prior to

investigating or prior to a decision. *Id.*. ¶ 117. Despite this limitation, Ms. Buchs issued a dismissal in which she stated that "ETIX conducted an assessment of the potential 'power dynamic' . . . and there was no evidence showing Respondent would have such authority in the future." Compl. ¶ 118. Ms. Buchs further noted that Mr. Estrada's allegation "does not meet the prima facie threshold." *Id.* ¶ 119. No prima facie threshold is mentioned in the Title IX regulations or University policy. *Id.* ¶ 120. Mr. Estrada appealed this determination on August 1. *Id.* ¶ 125. On September 3, Amy Krumenacker, the Manager of Employee Relations & Compliance, affirmed the dismissal of the complaint in a mere one-page opinion. *Id.* ¶ 129.

### G. The University Finds Dean Knight Not Responsible.

Adding insult to injury, on October 21, the University found Dean Knight "not responsible" for any violation of the "non-Title IX" sexual misconduct policy. Compl. ¶ 141. Despite reviewing the screenshots and screen recordings substantiating the fact that Mr. Estrada gave Dean Knight oral sex in the University public bathroom, the University found he did not violate any policy. *Id.* ¶¶ 142-143. Beyond that, the University found that there were "credibility" issues with Mr. Estrada's testimony, even though his testimony remained consistent that Dean Knight recorded him without his consent. *Id.* ¶ 144.

Dean Knight, for his part, had severe credibility issues. Compl. ¶ 145. Dean Knight shockingly denied ever engaging in sexual contact with Mr. Estrada, even though the screenshots and screen recordings were authentic and proved otherwise. *Id.* ¶ 146. Worse, Dean Knight claimed that he was impersonated. *Id.* ¶ 147. This

claim was so patently ridiculous, that even the University, which had clearly shown its bias in favor of Dean Knight, concluded the evidence supporting such a theory was "weak." Compl. ¶ 150. Even still, the University's refusal to say that Dean Knight was less credible than Mr. Estrada was just another manifestation of their deliberate indifference. *Id.* ¶ 151.

ARGUMENT

## I.      Legal Standard

A motion under Rule 12(b)(6) tests whether the complaint states "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a 12(b)(6) motion, a complaint need only plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When a defendant brings a 12(b)(6) motion, the Court does not resolve factual disputes; rather, when a complaint states well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The Court "accept[s] the well-pleaded factual allegations as true and draw all reasonable factual inferences from those allegations in the plaintiff's favor." *Air Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (citations omitted).

II.    **The Statute of Limitations Should be Tolled.**

A. **Equitable Tolling Should Apply.**

Given its extraordinary circumstances, this matter necessitates tolling the statute of limitations. Dean Knight chiefly argues that the claim against him should be dismissed because it is barred by the "one-year statute of limitations applicable for libel, slander, assault, battery, mayhem, wounding, malicious prosecution false arrest, or false imprisonment." ECF No. 16 at 4 (citing *Greenpeace, Inc. v. Dow. Chem. Co.*, 97 A.3d 1053, 1062 (D. C. Cir. 2014)). Indeed, the encounter between Mr. Estrada and Dean Knight occurred on July 3, 2024, and under usual circumstances, the statute of limitations would have run from this time. *See* Compl. ¶¶ 69-91. This case, however, is replete with "extraordinary circumstances" that require the statute to be tolled until the date Dean Knight was found "not responsible" on October 21, 2025.

In the District of Columbia, equitable tolling is only available in "extraordinary and carefully circumscribed instances." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998). "We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990). Here, Mr. Estrada has "actively pursued his judicial remedies" and was delayed in filing suit by "his adversary's misconduct."

7

First, Mr. Estrada was actively pursuing his remedies during the statutory period by engaging in the University's Title IX and non-Title IX processes. Mr. Estrada first contacted the University in January 2025, approximately seven months before the statutory deadline. Compl. ¶ 94. This process did not ultimately conclude until October 21, 2025, when the non-Title IX complaint was dismissed after the traditional statutory deadline. *Id.* ¶ 141. For its part, the Title IX complaint was dismissed on July 25, 2025, also after the traditional statutory deadline. *Id.* ¶ 112. These inexplicable delays by the University, not Mr. Estrada's own conduct, is the reason that Mr. Estrada did not meet the original statutory deadline.

The University's sexual harassment policy states it "strives to complete resolution of Formal Complaints within 94 calendar days from when the University has notice of the Formal Complaint." *See* American University Title IX Sexual Harassment IV(C)(4), Estimated Timeline for Resolution for Title IX Complaints.[1] While this is not a hard and fast deadline, the University is required to notify the parties in writing and explain the reason for the delay, as well as provide a new anticipated completion date. This never happened, and Mr. Estrada received nothing but silence from the Title IX office on several occasions. Compl. ¶¶ 94-141. In fact, Mr. Estrada's Title IX complaint took approximately twice the amount of time as laid

---

[1] *University Policy: Title IX Sexual Harassment Policy*, AMERICAN UNIVERSITY, at 11, https://www.american.edu/policies/au-community/upload/title-ix-sexual-harassment-policy.pdf (last visited April 23, 2026).

out in the policy, and his non-Title IX complaint took approximately triple the amount of time.

This delay was no fault of Mr. Estrada's, and went unexplained by the University. While Mr. Estrada zealously pursued his remedies, he was hampered from doing so by a third party, the University. Had the University stuck to its original timeline or made its timeline clear to Mr. Estrada, he would have been able to bring his claims much sooner. Instead, while he waited for the University to collect valuable evidence that would be integral to those claims, the University shirked its responsibility, never fully investigated Dean Knight or examined his phone, and let Mr. Estrada's claims languish. Mr. Estrada, who was a nineteen-year-old freshman when these claims arose, should not be barred from bringing suit because of obfuscation and bad faith of both Defendants.

Secondly, Dean Knight's concealment of the recordings and/or photographs likewise induced Mr. Estrada to let the filing deadline pass. This District has recognized the so-called "lulling doctrine." This doctrine comes into play when the "defendant's fraudulent concealment or misconduct lulled the plaintiff into allowing the filing deadline to pass." *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 34 (D.D.C. 2008). "[F]raudulent concealment tolls a statute of limitations when (1) there has been 'deliberate concealment' of (2) 'material facts' relating to the alleged wrongdoing and (3) the wronged party does not know of those facts and could not have discovered them through 'reasonable diligence.'" *Int'l Ass'n of Machinists & Aero. Workers, Dist.*

9

*Lodge 64 v. NLRB*, 130 F.3d 1083, 1087 (D.C. Cir. 1997) (citations omitted). Here, Dean Knight's conduct meets all three elements.

First, Dean Knight may have retained whatever recordings or photographs he took of Mr. Estrada; worse, he may have disclosed them to third parties. As Mr. Estrada alleged in his complaint, "Dean Knight, absent even the slightest penalty, was free to circulate the video recording or photographs." Compl. ¶ 175. Typically, one does not take a video or a picture, especially of such a private moment, and immediately destroy it. Given that Dean Knight, as admitted in his memorandum and as pled in the Complaint, denied much of Mr. Estrada's allegations, which presumably includes the existence of such a recording, he has deliberately concealed this fact. *Id.* ¶¶ 141-151; ECF No. 16 at 2 fn.1.

Second, any such recording would certainly be material to an intrusion upon seclusion claim. In fact, if the recording never existed, it would destroy Mr. Estrada's claim. Since it is the very heart of Mr. Estrada's claim, it cannot be reasonably disputed that such a recording would be "material."

Finally, Mr. Estrada, despite witnessing the recording or photography, could not have substantiated the existence of such a video without third party intervention, be that through the University, the Police, or the Court. Compl. ¶ 88. Mr. Estrada has no independent way of accessing or examining Dean Knight's phone. Without any third-party intervention, Mr. Estrada is entirely at Defendant's mercy. No amount of "reasonable diligence" would allow him to discover this information from Dean

10

Knight's phone. Given Dean Knight's fraudulent concealment of the recording and/or photography that is at the heart of this case, the statute should be tolled.

### B. Equitable Estoppel Precludes Defendant from asserting Untimeliness.

Should the Court decide that this case is not a fit for traditional equitable tolling, equitable estoppel should apply. Equitable estoppel "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 580 (D.C. Cir. 1998) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450-51 (7th Cir. 1990)). "More specifically, tolling on estoppel grounds is proper where 'a claimant has received inadequate notice, … where the court has led the plaintiff to believe that she had done everything required of her, … [or] where affirmative misconduct on the part of a defendant lulled the plaintiff into inaction.'" *Id.* (quoting *Mondy v. Secretary of Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988)).

Again, Dean Knight's misconduct should allow Mr. Estrada to toll the statute. Dean Knight, by concealing the recording or photographs he took of Mr. Estrada, caused substantial delays in this litigation. Mr. Estrada, who was a nineteen-year-old freshman, felt he needed imminent help, and believed the University to be in the most immediate position to help him. As the Complaint details, Mr. Estrada's beliefs were mistaken, and he was stone-walled and delayed further by the University.

Because Mr. Estrada had previously been involved with an investigation at the University, he knew the resources the University possessed and the lengths the University could go to in order to prove that an individual had non-consensually

11

recorded another on its property. This belief was not erroneous, as he had himself just been through such a process. Yet, the University took none of these actions with Dean Knight, allowing him to be free to retain the illicit material and circulate it as he pleased. Compl. ¶ 175. It could not even be bothered to review surveillance footage to prove that Dean Knight was on campus that day. *Id.* ¶ 148. Dean Knight's misconduct, which forced Mr. Estrada to turn to the only process he knew, resulted in the myriad delays that caused the statutory period to elapse. Mr. Estrada should not be punished for Dean Knight's, or the University's, misconduct, as this claim is the only avenue that remains to him to remedy this illicit recording.

### III.    In the Alternative, the Court Should Permit Limited Discovery.

Should the Court find that there currently is not enough in the record to toll the statute, it should permit limited discovery. The Federal Rules of Civil Procedure provide that parties may only seek discovery after a Rule 26(f) conference "except . . . when authorized by . . . court order." *Malibu Media, LLC v. Doe*, 64 F. Supp. 3d 51, 52 (D.D.C. 2014) (quoting Fed. R. Civ. P. 26(d)(1)). The D.C. Circuit, however, holds this rule "vests the trial judge with broad discretion to tailor discovery narrowly and to dictate the sequence of discovery." *Id.* (quoting *Watts v. SEC*, 482 F.3d 501, 507 (D.C. Cir. 2007)). "To determine whether to authorize discovery prior to a Rule 26(f) conference in a particular case, this district has applied a 'good cause' standard. *Id.* at 53 (citing *Warner Bros. Records Inc. v. Does 1-6*, 527 F. Supp. 2d 1, 2 (D.D.C. 2007)).

12

Here, good cause exists for narrow discovery. Mr. Estrada cannot say with certainty what Dean Knight has done with the recordings and/or photographs that were taken of him. Despite this, the likelihood of disclosure and future harm that come from these recordings or photographs is certainly "good cause" for limited discovery. Indeed, if Dean Knight has even retained such recordings or photographs, much less transmitted them to any potential third parties, this would represent an independent and continuous violation of Mr. Estrada's privacy. This retention of such illicit material also represents the continuous commission of a crime in the District of Columbia under D.C. Code § 22-3531(c)(1)(c)).

Accordingly, Mr. Estrada requests this Court grant limited discovery as a last resort to protect himself from such a crime. The limited discovery would include a forensic analysis of Dean Knight's phone, computer, and email for the limited purpose of finding any explicit images of Mr. Estrada. Should Dean Knight be found to ever have possessed such recordings, or to have ever disclosed such recordings, Mr. Estrada would certainly meet the requisite equitable tolling for the statute of limitations (not to mention the additional claims against Knight).

Mr. Estrada pursued his remedies from both the University and the University Police. He was met with silence. The University's investigation resulted in no penalties for Dean Knight. Still, the University found severe credibility flaws that necessitate a forensic analysis of Dean Knight's phone and the viewing of surveillance footage on campus. Dean Knight denied ever meeting, messaging, or engaging in sexual contact with Mr. Estrada, despite copious amounts of evidence to the contrary.

13

*See* Compl. ¶¶ 145-151. Worse, Dean Knight even claimed he was "impersonated" and not on campus the day of the incident. *See Id.* ¶ 147. Even with the low-effort and biased investigation, the University had no choice but to note that his theory was "weak." *See Id.* ¶ 149. The University and its officials had several avenues available to protect Mr. Estrada after making this conclusion. It could have easily reviewed security footage. *See Id.* ¶ 148. It did not. The University did not involve the police or have anyone forensically examine Knight's phone, despite doing exactly that when Mr. Estrada was accused of the same conduct. Mr. Estrada zealously pursued all available remedies but was stonewalled at every turn. Due to the University's inaction, Dean Knight has been free to retain and distribute this illicit material as he pleases.

The Court should, at a minimum, allow limited purpose discovery so that Mr. Estrada can firmly establish exactly what was done with the recordings or photographs, whether or when they were distributed or deleted, and where they are kept or stored to date. Good cause exists to protect him from further crimes and harm. This limited purpose discovery would also establish the existence of any other legal claims Mr. Estrada has against Dean Knight, which are impossible for him to ascertain at this time.

## IV.    Plaintiff Plausibly States a Claim.

Mr. Estrada plausibly states a claim for intrusion upon seclusion. Dean Knight spends much of his final section arguing Mr. Estrada cannot plausibly allege essential elements of this claim because he also committed wrongdoing in the University's

14

bathrooms. ECF No. 16 at 6-7. This argument does not logically follow. To state a claim for intrusion upon seclusion, there must be (1) an intrusion, which can be physical or non-physical, (2) upon the privacy of another or his affairs, if (3) that intrusion would be "highly offensive to a reasonable person." *Schuchart v. La Taberna del Alabardero, Inc.*, 365 F.3d 33, 35-36 (D.C. Cir. 2004).

It is obvious these three elements can be met. Dean Knight "intruded" by filming a private act without consent. Compl. ¶ 187. Sexual activity with another is fundamentally understood by all as a "private affair." *Id.* ¶ 188. Finally, the non-consensual filming of a sexual act, which is a crime, would be "highly offensive" to any reasonable person.

Dean Knight's argument is premised entirely on using Mr. Estrada's own matter, which has already been resolved, to cover for his own wrongdoing. Dean Knight claims that, because Mr. Estrada *secretly* filmed others in University bathrooms, he did not have a reasonable belief in the seclusion of the University bathrooms. ECF No. 16 at 6. Further, Dean Knight claims that no expectation of privacy existed because Mr. Estrada "sought company" in the bathrooms and because Dean Knight did not "conceal" his phone. *Id.* at 6-7. This argument does not logically follow for numerous reasons.

First, this argument completely ignores that Dean Knight, throughout the entire investigation at the University, denied any sexual activity and indeed went so far as to claim he was not on University property that day and was "impersonated." His current arguments relating to the lack of privacy, highlight the major credibility

15

issues with Dean Knight and underscore the need for discovery to protect Mr. Estrada from Dean Knight's retention and possible distribution of any recordings of sexual activity.

Second, Mr. Estrada's own recordings do not destroy any privacy expectation. Indeed, the very nature of *secretly* recording someone suggests an expectation of privacy. One would have no reason to *secretly* record if they knew a space had no expectation of privacy. Moreover, insofar as Dean Knight is suggesting that because Mr. Estrada has himself committed wrongdoing, no one can commit the same wrong to him, that argument suffers from the logical pitfalls.

Third, Mr. Estrada is aware of no case law that states he must be strictly alone for an intrusion to occur into his private affairs. Dean Knight's argument, that because Mr. Estrada "sought company" he was no longer secluded, if ran to its logical conclusion, would stand for the proposition that no sexual act is a "private affair." This is patently ridiculous. Reasonable individuals fundamentally understand that sexual acts are private affairs and any conclusion to the contrary cannot be afforded weight. Mr. Estrada, insofar as he "sought out" Dean Knight, sought to be excluded from the public eye with him, not to destroy any expectation of privacy.

Forth and finally, the argument that because Knight did not "conceal" his phone, there was no expectation of privacy is equally ridiculous. Again, if one follows this argument to its logical conclusion, it will mean that no one who is ever caught *secretly* recording another could be convicted of a crime or held civilly liable for this non-consensual act. It makes no difference, in the calculation of whether Dean Knight

16

intruded upon Mr. Estrada's privacy, if Mr. Estrada saw him recording or not. The relevant factor is that Mr. Estrada did not consent to such recording, not whether Dean Knight was good at hiding his own criminal actions.

## CONCLUSION

Mr. Estrada has plausibly pled all the elements for an intrusion upon seclusion claim. Even though the statute would have commenced on July 3, 2024, the statute should be tolled because of the extraordinary circumstances surrounding the case and both Defendants' wrongdoing. Should the Court decide that tolling is inappropriate, it should at least afford Mr. Estrada limited purpose discovery, so as to provide him an avenue to discover the facts germane to his claims that would otherwise be impossible to uncover.

Dated: April 23, 2026                          Respectfully submitted,

                                               /s/ Parker Bowman
                                               Parker Bowman, VA227
                                               Lindsay R. McKasson
                                               D.C. Bar No. 1618740
                                               BINNALL LAW GROUP, PLLC
                                               717 King Street, Suite 200
                                               Alexandria, Virginia 22314
                                               Phone: (703) 888-1943
                                               Fax: (703) 888-1930
                                               parker@binnall.com
                                               lindsay@binnall.com

                                               *Counsel for Plaintiff Kris Estrada*

17

## CERTIFICATE OF SERVICE

I certify that on April 23, 2026, a copy of the foregoing was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

/s/ Parker Bowman
Parker Bowman, VA227

*Counsel for Plaintiff Kris Estrada*