**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KRIS ESTRADA, | |
| *Plaintiff*, | Civil Action No. 26-cv-00603-ABJ |
| v. | |
| AMERICAN UNIVERSITY & BRAD KNIGHT, | |
| *Defendants.* | |

**DEFENDANT AMERICAN UNIVERSITY'S REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF KRIS ESTRADA'S COMPLAINT WITH PREJUDICE**

**TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ...................................................................................................... ii

**INTRODUCTION** ...................................................................................................................... 1

**ARGUMENT** .............................................................................................................................. 1

   I.   THE COURT SHOULD DISMISS COUNT I WITH PREJUDICE ................................. 1

       a.   Plaintiff Has Not Plausibly Alleged Severe and Pervasive Harassment ......................... 1

       b.   The University's Investigatory Actions Did Not Deprive Plaintiff of any Educational Opportunities and Benefits. ........................................................................................... 4

       c.   Plaintiff Fails to Plead that the University's Response To his Complaint Was Clearly Unreasonable ................................................................................................................. 7

           i.   Plaintiff Has Not Pleaded That the University Unreasonably Delayed the Investigation ............................................................................................................. 7

           ii.   Plaintiff's Argument that the University Could Have Taken Different Actions is Irrelevant and Inapposite ....................................................................................... 9

           iii.   Title IX Does Not Require that a Complainant Receive a Desired Outcome ........... 10

       d.   Plaintiff Does Not Provide Facts Showing that the University's Actions Caused Him to Undergo Further Harassment nor Left Him Vulnerable to It. ..................................... 10

   II.   PLAINTIFF'S BREACH OF CONTRACT CLAIM IS INADEQUATE AS A MATTER OF LAW. ........................................................................................................................ 11

       a.   Plaintiff Cites Unenforceable, Aspirational Language Which Does Not Give Rise to a Breach of Contract Claim. ........................................................................................... 11

       b.   The Court Should Not Permit Plaintiff to Amend His Pleadings Through Dispositive Motion Briefing. ......................................................................................................... 12

       c.   The New "Factual" Allegations Discussed in Plaintiff's Opposition Brief Support the University's Motion to Dismiss. .................................................................................. 13

   III.   THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE. 14

**CONCLUSION** ........................................................................................................................ 15

## TABLE OF AUTHORITIES

*Abbas v. Foreign Pol'y Grp.*, LLC,
   783 F.3d 1328, 1340 (D.C. Cir. 2015) ........................................................................14

*Ariel B. ex rel. Deborah B. v. Fort Bend Indep. Sch. Dist.*,
   428 F. Supp. 2d 640 (S.D. Tex. 2006) ...........................................................................3

*Boucher v. Trs. of Canisius Coll.*,
   No. 22-cv-00381, 2025 WL 3558203 (W.D.N.Y. Dec. 11, 2025) ............................2

*Cavalier v. Cath. Univ. of Am.*,
   306 F. Supp. 3d 9 (D.D.C. 2018) ..............................................................................7, 8

*Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*,
   526 U.S. 629 (1999)....................................................................................................1, 3

*Doe v. Bd. of Educ. of Anne Arundel Cnty.*,
   No. 1:25-cv-01703, 2026 WL 632377 (D. Md. Mar. 6, 2026) ..................................1

*Doe v. Columbia*,
   151 F.4th 435 (D.C. Cir. 2025)............................................................... *passim*

*Doe v. Emerson Coll.*,
   271 F. Supp. 3d 337 (D. Mass. 2017) ......................................................................8, 10

*Farley v. New River Cmty.*,
   No. 16-cv-09442, 2017 WL 440732 (S.D.W. Va. Feb. 1, 2017).......................4, 5, 6

*Fitzgerald v. Barnstable Sch. Comm.*,
   504 F.3d 165 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009) ...........9

*Garcia v. ECPI Univ. LLC*,
   No. 25-cv-245, 2026 WL 66749 (E.D. Va. Jan. 8, 2026) ..........................................2

*Jennings v. Univ. of N. Carolina*,
   482 F.3d 686 (4th Cir. 2007) .......................................................................................2

*Karasek v. Regents of Univ. of California*,
   956 F.3d 1093 (9th Cir. 2020) .....................................................................................8

*Owens v. Louisiana State Univ.*,
   No. 21-cv-00242, 2023 WL 8879763 (M.D. La. Dec. 22, 2023) .............................3

*Ricard v. Spartanburg Cmty. Coll.*,
No. 25-cv-1358, 2025 WL 3906253 (D.S.C. Dec. 1, 2025), *report and recommendation adopted*, No. 25-cv-01358, 2026 WL 67124 (D.S.C. Jan. 8, 2026) ......................................5, 6

*Saravanan v. Drexel Univ.*,
No.17-cv-03409, 2017 WL 5659821 (E.D. Pa. Nov. 24, 2017) .................................................8

*Thornton v. Chesterfield Cnty. Sch. Bd.*,
No. 24-cv-00859, 2025 WL 927064 (E.D. Va. Mar. 27, 2025)..................................................2

*Whiting v. Merrill Lynch & Co.*,
No. 23-cv-00641, 2024 WL 243475 (D.D.C. Jan. 23, 2024)....................................................12

*Wyler v. Connecticut State Univ. Sys.*,
100 F. Supp. 3d 182 (D. Conn. 2015)........................................................................................9

**INTRODUCTION**

Defendant American University (the "University"), by and through undersigned counsel, hereby submits this Reply Memorandum of Points and Authorities in Further Support of its Motion to Dismiss Plaintiff Kris Estrada ("Plaintiff")'s Complaint with Prejudice.

**ARGUMENT**

**I.    THE COURT SHOULD DISMISS COUNT I WITH PREJUDICE.**

**a.    Plaintiff Has Not Plausibly Alleged Severe and Pervasive Harassment.**

Plaintiff does not plead facts suggesting that he endured severe or pervasive harassment. As discussed in the University's Moving Brief, to plead the first element of a prima facie case, "the sexual harassment complained of must be so severe, pervasive, and objectively offensive . . . that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Doe v. Columbia*, 151 F.4th 435, 446 (D.C. Cir. 2025) (citing *Davis Next Friend LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 651 (1999)).

In his Opposition Brief, Plaintiff argues that "*Davis* and its progeny were concerned chiefly with 'peer harassment.'" (Opp. Br. at 18.)  Plaintiff maintains that his encounter with Defendant Knight is more akin to teacher-on-student harassment, not peer-on-peer harassment. (*Id.* at 18-19.)  It follows, in Plaintiff's telling, that this single event (and its ramifications) are sufficiently severe and pervasive to establish the first element of a prima facie case. *See* (*id.*). This is incorrect.

First, Knight never served as one of Plaintiff's teachers or instructors.  But even assuming Knight is a teacher, courts regularly apply *Davis* and the traditional "severe" or "pervasive" standard while adjudicating teacher-student harassment claims. *See, e.g.*, *Doe v. Bd. of Educ. of Anne Arundel Cnty.*, No. 1:25-cv-01703, 2026 WL 632377 at *5-7 (D. Md. Mar. 6, 2026) (discussing *Davis* and applying the severe or pervasive standard to a teacher-student harassment

1

claim); *Garcia v. ECPI Univ. LLC*, No. 25-cv-245, 2026 WL 66749 at 647-48 (E.D. Va. Jan. 8, 2026) (applying "severe or pervasive" framework); *Boucher v. Trs. of Canisius Coll.*, No. 22-cv-00381, 2025 WL 3558203 at *20, 22 (W.D.N.Y. Dec. 11, 2025).

Second, Plaintiff's Complaint plainly does not spell out harassment which is severe and pervasive. In determining whether harassment facilitates such an environment, courts look at "the positions and ages of the harasser and victim, whether the harassment was frequent, severe, humiliating, or physically threatening, and whether it effectively deprived the victim of educational opportunities or benefit." *Jennings v. Univ. of N. Carolina*, 482 F.3d 686, 696 (4th Cir. 2007); *see also Thornton v. Chesterfield Cnty. Sch. Bd.*, No. 24-cv-00859, 2025 WL 927064 at *4 (E.D. Va. Mar. 27, 2025) (applying the *Jennings* framework). In Plaintiff's Complaint, he contends that the bathroom stall encounter between he and Defendant Knight occurred on July 3, 2024. Compl. ¶¶ 69-91. Plaintiff waited six months to file a report with the University's Title IX and Equity office ("ETIX"). Compl. ¶ 94. And all the while, Plaintiff concedes that he "never heard from Dean Knight again." *Id.* ¶ 92.

On its face, the harassment was not "frequent." *Jennings*, 482 F.3d at 696. Plaintiff does not allege that Defendant Knight threatened him physically. He also does not assert that Defendant Knight threatened, warned, or hinted at the fact that he could (or would) release any illicit video of Plaintiff performing an intimate act.[1] Plaintiff's Complaint concedes that, despite his perception of continuing harm, the harassment itself was a one-time occurrence, which was neither severe nor pervasive.

---

[1]    To be precise, Plaintiff does not allege that Defendant Knight possesses such a video. In his Opposition Brief, he restates his belief that Defendant Knight may have recorded their encounter and that Defendant Knight "presumably kept" the recording of the bathroom encounter. (Opp. Br. at 17.)

Third, on a related point, Plaintiff tries to portray this single incident as ongoing, because Defendant Knight "could have released his illegally obtained photos and/or videos at any time," and, therefore, "retention of illicit material is an ongoing and continuously ignored act that satisfies the pervasiveness requirement under *Davis*." (Opp. Br. at 19.) But this argument misses the mark. A deliberate indifference claim looks at whether "the sexual harassment complained of is. . . so severe, pervasive, and objectively offensive . . . that the victim-students are effectively denied equal access to an institution's resources and opportunities." *Columbia*, 151 F.4th at 446. That is, the harassment itself, not the mere possibility of harassment, must be severe or pervasive. *See, e.g.*, *Owens v. Louisiana State Univ.*, No. 21-cv-00242, 2023 WL 8879763 at *10 (M.D. La. Dec. 22, 2023) (denying summary judgment because reasonable jury could conclude that harassment was severe and pervasive when peer took nude photo of complainant **and** disseminated it widely); *Ariel B. ex rel. Deborah B. v. Fort Bend Indep. Sch. Dist.*, 428 F. Supp. 2d 640, 649, 667 (S.D. Tex. 2006) (one time incident where student exposed another student while a third person took a photo does not constitute severe and pervasive environment). Plaintiff's theory of ongoing harassment is facially deficient and should be rejected.

Finally, even if the Court credits Plaintiff's unique theory of "ongoing" harassment, it is not clear how University resources and opportunities are implicated. After all, the University expelled Plaintiff in June of 2025 after he pleaded guilty to misdemeanor voyeurism charges, and the University no longer employs Defendant Knight. Compl. ¶¶ 7 n.1, 154. Plaintiff cannot be deprived of "equal access" to resources and opportunities at a university where he is no longer enrolled. This claim falls flat, and should be dismissed.[2]

---

[2]    In its Moving Brief, the University did not contest the third element of a prima facie case, examining whether it had "substantial control over both the harasser and the context in which the known harassment occurs." *Columbia*, 151 F.4th at 446. However, based on Plaintiff's

### b. The University's Investigatory Actions Did Not Deprive Plaintiff of any Educational Opportunities and Benefits.

In its Moving Brief, the University explained how Plaintiff failed to plead that his single encounter with Defendant Knight resulted in the denial of any educational benefits or opportunities. (Mov. Br. at 17.) Plaintiff argues that his Complaint sufficiently alleges benefit denial because "he lost the enjoyment of his student organization memberships and could no longer sufficiently complete his schoolwork or attend class." (Opp. Br. at 30.) This is legally insufficient.

Plaintiff does not adequately plead that the bathroom encounter with Defendant Knight led to the denial of educational resources and opportunities at the University. A few examples serve as helpful guideposts on this point. In *Farley v. New River Community*, one of the plaintiffs, Rebecca Farley, initiated a Title IX lawsuit against her former college, as well as a former professor, Michael Curry. *Farley v. New River Cmty.*, No. 16-cv-09442, 2017 WL 440732 at *1 (S.D.W. Va. Feb. 1, 2017). Ms. Farley claimed that, while enrolled in his class, Curry sent her photos of his erect penis and legs. *Id.* Ms. Farley asserted that, even after she raised concerns to college officials, the inadequacy of the subsequent investigation violated Title IX. *Id.* at *3. The court subsequently dismissed Ms. Farley's Title IX claim. *Id.* at *6. In so doing, the court explained that the complaint contained no allegations that Ms. Farley was "forced to endure sexual harassment on a regular basis while earning her degree." *Id.* at *5. The court rejected Ms. Farley's invocation of academic struggles, reasoning that the "stress and embarrassment" which resulted

---

Opposition Brief, it bears noting that the University has never, and could not, exercise control over the contents of an individual's private cell phone. Therefore, even assuming Defendant Knight took such a video (and still possesses it today), it is unclear how the University could order destruction or prevent dissemination. Plaintiff's attempt to portray the harassment as ongoing reveals his true aim: he seeks for Defendant Knight to face criminal or civil liability. (Opp. Br. at 16-17.) That goal has no bearing on Plaintiff's inability to plead a Title IX Deliberate Indifference claim.

from on-campus rumors of an affair between her and Curry "is not the same as fear or continued suffering resulting from a persistent atmosphere of sexual harassment necessarily endured in order to finish school." *Id.* at *6. The opinion notes that "Ms. Farley was not required to have continued contact with Professor Curry, was not subject to his leadership after the alleged incident occurred, and does not claim that any similar actions occurred after the conduct alleged in her complaint." *Id.* at *5. The court wrote that "[g]iven the absence of allegations in Ms. Farley's complaint supporting an atmosphere of sexual harassment that she had to endure to earn her degree, the Court finds that she has not alleged sufficient facts to show that the alleged conduct created a hostile environment such that she was denied equal access to her institution's resources and opportunities." *Id.* at *6.

The facts of *Ricard v. Spartanburg Cmty. Coll.*, No. 25-cv-1358, 2025 WL 3906253 (D.S.C. Dec. 1, 2025), report and recommendation adopted, No. 25-cv-01358, 2026 WL 67124 (D.S.C. Jan. 8, 2026), are inapposite to the above-captioned case. In *Ricard*, the plaintiff joined the welding program at Spartanburg Community College. 2025 WL 3906253 at *1. The plaintiff alleged pervasive sexual harassment in the welding department, including intense and frequent inappropriate conduct by one particular male instructor. *Id.* In plaintiff's telling, the harassment was so frequent and intense, that she began to miss class to avoid the instructor. *Id.* at *2. The court subsequently explained that "Plaintiff has alleged that Defendant allowed a hostile and abusive environment to continue in its Welding Program, which caused Plaintiff to be uncomfortable around the male instructor and resulted in her missing classes." *Id.* at *5. Finding this to be a "concrete" and "negative" harm, the court denied Spartanburg Community College's motion to dismiss. *Id.*

5

This case is analogous to *Farley*, and clearly distinguishable from *Ricard*.  Here, Plaintiff alleges that he "was subjected to harassment based on his sex in the form of a recording taken without his consent of sexual activity between him and Dean Knight."  Compl. ¶ 167.  However, as in *Farley*, Plaintiff fails to plead that he endured ongoing sexual harassment during the several months between his initiating of a complaint and expulsion from the University.  Compl. ¶ 92 ("Mr. Estrada never heard from Dean Knight again").  And just like Mrs. Farley, Plaintiff does not allege that he was required to have any contact with Defendant Knight, nor does he claim that any ***actual*** harassment occurred after the July 3, 2024 encounter.

However, this case is in stark contrast to *Ricard*, where the claimant alleged that her academic department, and the instructors employed therein, facilitated a consistently hostile and retaliatory environment.  *See Ricard*, 2025 WL 3906253 at *1.  Here, Plaintiff does not allege that he ever needed to see Defendant Knight again to attend or participate in any courses or clubs.  He does not claim that Defendant Knight ran (or was a member of) his student organizations, nor that he taught (or attended) any of Plaintiff's courses.[3]  That he purportedly generally "lost the enjoyment of his student organization memberships" is disappointing, but not an actionable denial of educational benefits or opportunities.  This argument is unavailing and should be rejected.

---

[3]    By way of example, Plaintiff alleges that Defendant Knight was "Senior Director of the AU Core Curriculum."  Compl. ¶ 42.  He also claims that Defendant Knight worked with the University College Program.  *Id.* ¶ 43.  However, in Plaintiff's own telling, these were programs/components of the first-year experience at the University.  *Id.* ¶¶ 42-43.  The bathroom encounter allegedly occurred **after** Plaintiff completed his first year at the University.  And while Plaintiff refers to Defendant Knight's role in the "AU Cornerstone" program, he does not allege that he could not, or did not, participate in this program after the bathroom encounter.  Put simply, Plaintiff's Complaint is devoid of factual allegations evincing a concrete denial of educational benefits and opportunities.  The Court should so hold.

6

In summary, Plaintiff pleads neither severe or pervasive harassment, nor a denial of educational benefits or opportunities. Plaintiff cannot establish the first element of a prima facie deliberate indifference claim.

### c. Plaintiff Fails to Plead that the University's Response To his Complaint Was Clearly Unreasonable.

In its Moving Brief, the University explained that Plaintiff's argument of indifference was merely a disagreement with the outcome of the University's Title IX and Non-Title IX investigations. (Moving Br. at 17-19.) In his Opposition Brief, Plaintiff asserts unreasonable delays and offers suggestions for investigative steps the University could have undertaken. These arguments are either erroneous or irrelevant, for the reasons outlined below.

### i. Plaintiff Has Not Pleaded That the University Unreasonably Delayed the Investigation.

Plaintiff has failed to allege an unreasonable delay in the processing of his complaint nor the undertaking of an investigation. In his Opposition Brief, Plaintiff cites *Cavalier v. Cath. Univ. of Am.*, 306 F. Supp. 3d 9 (D.D.C. 2018), for the proposition that a 298 day delay is "problematic" and unreasonable. (Opp. Br. at 21-22.) This contention overstates *Cavalier*'s holding, and *Cavalier* does not support Plaintiff's assertion of inexcusable delay.

In *Cavalier*, the court held that, when Catholic University took 95 days to inform the complainant that it was closing the investigation into her allegations, this in and of itself was not clearly unreasonable. *Cavalier*, 306 F. Supp. 3d at 29-30. Rather, the court determined that the ten month delay "before holding a disciplinary hearing and issuing a decision on her charge," was likely sufficient for the plaintiff to plausibly state a deliberate indifference claim. *Id.* at 30. However, the court qualified this finding, explaining that other factual allegations (namely the disregarding of a toxicology report, among other procedural deficiencies) give rise to an inference of deliberate indifference. *Id.*

Here, Plaintiff's Complaint does not allege a substantial (or even any significant) delay. Plaintiff initiated his Title IX complaint on January 7, 2025. Compl. ¶ 94. The University conducted an intake interview two days later. *Id.* ¶ 95. Then, in March, just two months later, the University informed Plaintiff that it would be assigning an investigator. *Id.* ¶ 101. In April, the University issued a Notice of Allegation and assigned an investigator to review Plaintiff's claims. *Id.* ¶¶103-04. Over the course of the next month and a half, Plaintiff was interviewed and submitted a written statement. *Id.* ¶¶ 106-08. Then in July of 2025, the University issued a Notice of Dismissal as to Plaintiff's Title IX claim. *Id.* ¶ 112. In **just** six months, the University received, assessed and resolved Plaintiff's Title IX claim. Put simply, this case is starkly different from *Cavalier*. This Court should not find Plaintiff's allegations of delay to be persuasive. *See, e.g.*, *Karasek v. Regents of Univ. of California*, 956 F.3d 1093, 1106 (9th Cir. 2020) (eight and a half month delay was not unreasonable when the University of California communicated with complainants and investigated the allegations).

Moreover, to the extent Plaintiff is suggesting that the University somehow violated Title IX by failing to pursue "any action" regarding his non-Title IX assertions of sexual exploitation, this is patently incorrect. As noted in the University's Moving Brief, the University did conduct a full investigation of Plaintiff's non-Title IX claims, drafted a fulsome report, and shared it with Plaintiff. (ECF No. 9-2.) The fact that Plaintiff might disagree with the outcome of that report does not support a claim of deliberate indifference. *See, e.g.*, *Saravanan v. Drexel Univ.*, No. 17-cv-03409, 2017 WL 5659821, at *7 (E.D. Pa. Nov. 24, 2017) ("Deliberate indifference claims impose a significant burden on the plaintiff and consequently rarely proceed beyond a motion to dismiss"); *Doe v. Emerson Coll.*, 271 F. Supp. 3d 337, 355–56 (D. Mass. 2017).

### ii.    Plaintiff's Argument that the University Could Have Taken Different Actions is Irrelevant and Inapposite.

Plaintiff's Opposition Brief offers investigative steps the University could have taken, some of which are well beyond his actual pleading.  (Opp. Br. at 20, 24-27.)  Plaintiff opines that the University could have called the police to report Defendant Knight, or, alternatively, could have pulled "camera footage of the day in question."  (*Id.* at 25.)

Plaintiff's argument for additional investigative steps is not only beyond his pleading, it misses the mark.  A Title IX complainant is entitled to a reasonable investigation, not a perfect one.  *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 174 (1st Cir. 2007), *rev'd on other grounds*, 555 U.S. 246 (2009) ("In hindsight, there may be other and better avenues that the School Committee could have explored or other and better questions that could have been asked during the interviews. But Title IX does not require educational institutions to take heroic measures, to perform flawless investigations, to craft perfect solutions, or to adopt strategies advocated by parents"); *Wyler v. Connecticut State Univ. Sys.*, 100 F. Supp. 3d 182, 195 (D. Conn. 2015) (granting summary judgment for the university, in part because "[n]o reasonable jury could find deliberate indifference based on plaintiff's speculative assertion that additional investigatory steps might have changed the outcome of the investigation or disciplinary process in some way").

Plaintiff may wish that the University took additional (or different) steps in investigating his Title IX and non-Title IX claims.  That is of no matter.  Plaintiff has failed to adduce facts that University's response was "clearly unreasonable in light of the known circumstances."  *Columbia*, 151 F.4th at 447.  As such, the Court should hold that Plaintiff has failed to sufficiently allege the fourth element of a prima facie deliberate indifference claim.

### iii.   Title IX Does Not Require that a Complainant Receive a Desired Outcome.

Title IX does not afford a remedy to complainants who merely do not obtain the sanctions they desire.  Remarkably, Plaintiff's Opposition Brief unintentionally concedes that this suit is a thinly veiled disagreement with the outcome of the University's investigatory process.  Plaintiff writes that "Mr. Estrada alleged that his non-Title IX complaint was similarly dismissed through improper and erroneous credibility determinations," which "should be enough to make it past the motion to dismiss stage."  (Opp. Br. at 26.)

As noted above and in the University's Moving Brief, Plaintiff's non-Title IX complaint was *not* dismissed – it was fully investigated, and a full investigative report was drafted.  At the end of the investigation, Dr. Knight was found not responsible, because there was insufficient evidence supporting an adverse finding.  As discussed in the University's Moving Brief, "Title IX does not guarantee that an investigation will yield the outcome that a complainant desires. Nor does it require that all complainants be deemed credible, simply because they are complainants. A school satisfies its obligations if it engages in a reasonable process for investigating and addressing claims of sexual harassment." *Emerson Coll.*, 271 F. Supp. 3d at 355–56.  Therefore, Plaintiff's disagreement with investigatory outcome does not, and cannot, establish deliberate indifference.  His argument to the contrary should be flatly rejected.

### d.   Plaintiff Does Not Provide Facts Showing that the University's Actions Caused Him to Undergo Further Harassment nor Left Him Vulnerable to It.

In its Moving Brief, the University explained that Plaintiff has failed to plead the fifth element of a prima facie deliberate indifference claim.  (Moving Br. at 20-21.)  To reiterate, the fifth and final element requires Plaintiff to state that the University's indifference caused him to "undergo harassment" or made him "liable or vulnerable to it."  *Columbia*, 151 F.4th at 446.

10

Plaintiff's Opposition Brief attempts to stretch the Complaint (and its attendant allegations) beyond logical bounds.  Plaintiff writes "that he is the victim of ongoing and continuous harassment due to the University's deliberate indifference" because Defendant Knight *may* have recorded him, *might* still have a copy of this recording, and *could* disseminate them at any time.

First of all, none of this speculative non-existent harassment is occurring within the academic environment of American University.  As discussed *supra*, Plaintiff left the University in June of 2025.  Compl. ¶ 7 n.1.  And it is undisputed that the University no longer employs Defendant Knight.  Compl. ¶ 154.

Moreover, Plaintiff's averment makes no logical sense and is legally unsupported.  If Plaintiff's theory were true, then any single incident of harassment renders a Defendant liable for eternity because there "might be" additional harassment someday in the future.  This is not the legal standard, and Plaintiff does not cite to binding or even persuasive authority suggesting otherwise.  (Opp. Br. 23-24.)

The Court should dismiss Count I, for failure to state a claim upon which relief can be granted.

## II. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS INADEQUATE AS A MATTER OF LAW.

### a. Plaintiff Cites Unenforceable, Aspirational Language Which Does Not Give Rise to a Breach of Contract Claim.

The University's Moving Brief explains why Plaintiff's Breach of Contract claim is deficient. (Moving Br. at 22-24.)  Specifically, Plaintiff's Complaint merely cites the University's aspirational goal "to prohibit sexual harassment and misconduct" as the basis for his claim.  Compl. ¶ 182.  This language, which imposes no reciprocal obligation on Plaintiff, cannot give rise to a cognizable breach of contract claim.

11

Plaintiff offers a few arguments opposing dismissal, none of which have merit. Most notably, Plaintiff's invocation of *Doe v. American University* is inapposite. (Opp. Br. at 32-33.) Plaintiff writes that the Court in *Doe* permitted the plaintiff's breach of contract claim to survive a motion to dismiss. (Opp. Br. at 33.) Plaintiff cites the contractual provisions relied upon by the plaintiff in Doe, namely a supposed disregard for the applicable statute of limitations, procedural deviations from the University's Title IX Sexual Harassment Policy, and the denial of recusal rights by bias hearing panel members. (*Id.*) In Plaintiff's telling, "[t]hese promises were not vague pronouncements; they were commitments that the University gave to students." (*Id.*) Plaintiff is correct; however, he wrongly analogizes the allegations in the *Doe* complaint to the contentions he raises before this Court.

In this case, Plaintiff does not cite any sufficiently definite and enforceable policy provision that the University purportedly violated. In fact, he solely invokes language from the University's Title IX Sexual Harassment Policy (the "Policy") which seeks to "to prohibit sexual harassment and misconduct." Compl. ¶ 182. This is fundamentally different from Doe, where the plaintiff alleged specific, concrete, procedural deficiencies to survive a motion to dismiss. In other words, while Plaintiff may be right that both cases cite to American University policies, the particular language relied upon differs in a legally material and dispositive way. Plaintiff's Breach of Contract claim should be dismissed.

### b. The Court Should Not Permit Plaintiff to Amend His Pleadings Through Dispositive Motion Briefing.

"It is well established that a party. . . may not amend a pleading through an opposition brief." *Whiting v. Merrill Lynch & Co.*, No. 23-cv-00641, 2024 WL 243475, at \*2 (D.D.C. Jan. 23, 2024). Yet, that is exactly what Plaintiff tries to do here. In his Opposition Brief, Plaintiff, for the first time, appears to quote from several Policy provisions and make additional factual

arguments, none of which are referenced in his Complaint.  (Opp. Br. at 20, 24-25, 34-35.)  The Court should decline to consider these arguments in ruling on the University's Motion to Dismiss.

### c. The New "Factual" Allegations Discussed in Plaintiff's Opposition Brief Support the University's Motion to Dismiss.

Setting aside that Plaintiff cannot suddenly invoke new Policy provisions to remedy his clear pleading deficiencies, if the Court is inclined to consider Plaintiff's additional factual allegations, they are facially deficient.

By way of example, Plaintiff alleges that "once the University had 'actual knowledge,' it had certain duties to respond promptly and protect Mr. Estrada and conduct a thorough investigation," but, instead, it "turned a blind eye and ignored his complaints."  (Opp. Br. at 35.) Yet, for the reasons explained *supra*, the University did not act in an unreasonable manner when it resolved **both** Plaintiff's Title IX and non-Title IX complaints.[4]  And while Plaintiff repeats the axiom that the University "ignored" his complaints, that contention is flatly contradicted by Exhibit A attached to the University's Motion to Dismiss, which outlined the thorough investigative steps taken regarding Plaintiff's allegations.  *See* Compl. ¶¶ 122, 139, 182 ("the University failed to actually investigate Mr. Estrada's formal complaint") ("[e]ven if technically true that Dean Knight was not a 'faculty' member, the University made no effort to meaningfully investigate him as a staff member either"); ("By failing to investigate Dean Knight, the University breached its contract with Mr. Estrada through violating its promise to prohibit sexual harassment and misconduct, instead tolerating it by allowing Dean Knight to escape unaffected"); (Opp. Br. at 17) (alleging that the University "performed a perfunctory, low effort 'investigation' of the

---

[4]    Arguably, Plaintiff relies on unenforceable and vague Policy language in raising this argument in the first place.  Plaintiff discusses "certain duties" the University failed to perform, but does not provide enough factual matter for the University to determine what those duties are.

matter to attempt to wash its hands of responsibility for the criminal acts of its employee"); but *see* (ECF No. 9-2) (the Non-Title IX Investigative Report detailing procedural steps undertaken).[5] Even while improperly trying to amend his pleadings through dispositive motion briefing, Plaintiff still fails to cite any definite, enforceable contractual obligation which the University failed to fulfill. Dismissal of Count II, with prejudice, is proper.

### III.    THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT WITH PREJUDICE.

The Court should not afford Plaintiff leave to amend to file a First Amended Complaint. "Dismissal with prejudice is warranted when the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Abbas v. Foreign Pol'y Grp.*, LLC, 783 F.3d 1328, 1340 (D.C. Cir. 2015).

The arguments raised in Plaintiff's Opposition Brief actually support the University's argument that leave to amend would be futile here. Plaintiff does not (and cannot) allege severe or pervasive harassment, nor that any action or inaction on the part of the University caused him to undergo additional harassment. And in opposing the Motion to Dismiss his Breach of Contract claim, Plaintiff cites several Policy provisions, but does not allege any substantive, material breach. (Opp. Br. at 33-36.) This Court should dismiss Counts I and II, with prejudice, for failure to state a claim upon which relief can be granted.

---

[5]     It is, curious, that at times Plaintiff asserts that the University did not investigate Defendant Knight at all, while, on other occasions, Plaintiff calls the investigation "perfunctory" and "low effort." The University submits that this is indicative of a lack of factual support for Plaintiff's allegations. It is also a reminder that Plaintiff initiated this case to challenge the outcome of the two investigations, not any procedural infirmity.

14

## CONCLUSION

For the reasons outlined herein, and in the University's Moving Brief (ECF No. 9-1), the University respectfully requests that the Court dismiss Counts I and II of Plaintiff's Complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

**SAUL EWING LLP**

April 23, 2026

*/s/ James A Keller*
James A. Keller (*Admitted Pro Hac Vice*)
1735 Market Street, Suite 3400
Philadelphia, PA 19103-7504
Tel: (215) 972-7777
james.keller@saul.com

Timothy D. Intelisano (D.C. Bar. No. 90033254)
1919 Pennsylvania Avenue NW, Suite 550
Washington, D.C. 20006
Tel:    (202) 295-6615
timothy.intelisano@saul.com

15

**CERTIFICATE OF SERVICE**

      I certify that on this 23rd day of April 2026, I have electronically filed the foregoing **DEFENDANT AMERICAN UNIVERSITY'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system which will automatically send e-mail notification of such filing to all parties registered to receive CM/ECF notifications.

Dated: April 23, 2026                     */s/ James A, Keller*
                                      James A. Keller

                                     *Defendant American University*

16